Elizabeth W. McCullough, et al. [1] v. commissioner. McCullough v. Commissioner
Docket Nos. 3588-64, 5493-65, 5494-65.
United States Tax Court
T.C. Memo 1968-69; 1968 Tax Ct. Memo LEXIS 224; 27 T.C.M. (CCH) 360; T.C.M. (RIA) 68069; April 23, 1968. Filed *224 Where a husband, while separated from his wife, agrees in writing to make periodic payments to her subsequent to the obtaining of an absolute divorce, and where such payments were made in recognition of the obligation of support, held, they were made "because of the marital or family relationship" as required by sec. 71(a)(1) and (a)(2), I.R.C. 1954, and the payments are includable in the wife's gross income. Lyn Bond, Jr., 200 Attorney's Bldg., Charlotte, N.C., for the petitioners. Charles B. Sklar, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined deficiencies in income tax for the years and in the amounts as follows: Docket No.
Petitioner
Year
Deficiency
3588-64
Elizabeth W. McCullough
1961
$338.14
5493-65
Elizabeth W. McCullough
1962
339.90
5494-65
Elizabeth W. and John Paul McCullough
1963
390.06
*225 These cases were consolidated for hearing and will be decided together. The sole issue for our determination is whether payments made by Joseph B. Oxendine (hereinafter referred to as Joseph) to his former wife, Elizabeth W. Oxendine McCullough (hereinafter referred to as petitioner), in the amount of $1,500 per year for each of the tax years 1961, 1962, and 1963, were includable in petitioner's gross income for those years pursuant to either subsection (a)(1) or (a)(2) of section 71 of the Internal Revenue Code of 1954. [2]
Findings of Fact Some of the facts have been stipulated and are found accordingly. On the date of the filing of the petition in each of the three cases at issue, as well as during each of the years 1961, 1962, and 1963, petitioner was a resident of Charlotte, North Carolina. Similarly, during 1963 and on September 14, 1965, the date of the filing of the petition in docket No. 5494-65, petitioner's present husband, John Paul McCullough (hereinafter referred to as John), resided in Charlotte, North Carolina. For each of the taxable years *226 1961 and 1962, petitioner filed her individual income tax return with the district director, Greensboro, North Carolina. On December 14, 1963, petitioner married John and for the taxable year 1963 they filed their joint income tax 361 return with the district director, Greensboro, North Carolina. Petitioner and Joseph were married on July 18, 1952, and were separated in May 1958. No children were born of the marriage. On December 24, 1958, petitioner and Joseph, at petitioner's insistence, went before a justice of the peace in Charlotte, North Carolina, and signed a separation agreement. Except for the statement that they had separated in May 1958, the agreement merely contained their names typed in the appropriate blanks. In addition to stating that the parties had lived separate and apart since May 1958, this agreement provided, in general, that they would continue to live separate and apart, that they each released any claims they might have in the other's property, and that petitioner released Joseph from all claims for maintenance or support which she might have by reason of their marital relationship, so long as the terms of the separation agreement were kept. The pertinent *227 section of the separation agreement is as follows: 4. * * * and the said, Elizabeth W. Oxendine releases her said husband from any and all claims which she may have by reason of the marital relations herefore existing between them for maintenance or support, so long as the terms and conditions of the Deed of Separation are kept, Elizabeth W. Oxendine, shall never hereafter make any demands, on her said husband for support of any kind, whatsoever, crominal [sic] or civil * * * The execution of the separation agreement was voluntarily undertaken by both petitioner and Joseph and they each understood, at that time, that they were releasing the other from any and all claims arising out of the marriage. Joseph received his Ph.D. in education from Boston University in June of 1959. Shortly thereafter, he accepted a position on the faculty of Temple University, Philadelphia, Pennsylvania, and began teaching at Temple in September 1959. As a result of petitioner's expressed need for financial assistance, Joseph began sending her $100 a month beginning in September 1959. The amount was increased to $125 a month in May 1960, after petitioner expressed to Joseph a need for greater assistance. *228 On his 1959 income tax return, Joseph claimed an alimony deduction for monthly payments made to petitioner during that year. Upon disallowance of the deduction, Joseph was advised that the basis for the disallowance was that the payments to petitioner had not been made pursuant to a court order or written agreement. On August 25, 1960, Joseph went to the office of an attorney in Albemarle, North Carolina, and signed a document which provided as follows: AGREEMENT For a valuable consideration, I hereby promise and agree to pay to my wife, Elizabeth W. Oxendine, the sum of One Hundred Twenty-Five Dollars ($125.00) monthly, the first payment to be made on or before September 5, 1960, and a like payment on or before the fifth (5th) day of each and every month thereafter until the 5th day of April, 1965. These monthly payments shall be made until the 5th day of April, 1965, unless my said wife is in the meantime married, and in the event she does marry said monthly payments shall cease at the date of said marriage. The fact that my said wife may in the meantime secure a divorce shall not operate to release me from making said monthly payments. WITNESS my hand and seal this the *229 25th day of August, 1960. /s/ Joseph Bruce Oxendine Joseph believed that the provisions of the August 25th document were legally binding upon him and pursuant to that document he made monthly payments of $125 to petitioner through March 1964. During each of the taxable years in question, 1961 through 1963, the monthly payments received by petitioner from Joseph totaled $1,500. At the time the August 25th agreement was signed, petitioner was a resident of North Carolina and Joseph resided in Philadelphia, Pennsylvania. Joseph did not retain the Albemarle, North Carolina, attorney but agreed to sign the above document in his office because Joseph had been led to believe, after conversations with petitioner, that she would not give him a divorce unless he obligated himself to make monthly payments to her. Although petitioner had never specifically conditioned her applying for a divorce on Joseph's signing the above document, both parties had discussed on several occasions what amount the monthly payment from Joseph should be. They had agreed to the monthly payment of $125 before going to the attorney's office on August 25, 1960. Joseph was interested in getting a divorce at that *230 time although petitioner was "not particularly" anxious to obtain one. Petitioner had the understanding with Joseph that she would proceed immediately 362 to apply for a divorce if Joseph signed the above document. At the time Joseph signed the August 25th document, he was of the opinion, after speaking with an attorney in Philadelphia, Pennsylvania, that the easiest way to obtain a divorce from petitioner was to have her apply for a divorce in North Carolina. Although Joseph was interested in documenting his monthly support payments to petitioner by a written agreement in order that he might properly deduct such payments as alimony, he would not have signed such a document nor continued to make payments to petitioner unless petitioner had agreed to file suit for divorce immediately after he signed the document. In accordance with the understanding between Joseph and petitioner, petitioner, on August 25, 1960, paid the required court costs and filed a complaint in the Superior Court, Stanly County, North Carolina, seeking an absolute divorce from Joseph. On October 17, 1960, petitioner secured a judgment of absolute divorce from Joseph which judgment made no reference to alimony *231 payments. Joseph remarried on August 19, 1961. Opinion The question presented is whether payments received by petitioner from her former husband, during the years 1961 through 1963, constituted taxable income to her under either section 71(a)(1) or 71(a) (2). [3]Section 71(a)(1) relates to the incidence of tax on periodic payments received by a wife from her husband in a situation where the wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance. In order to satisfy section 71(a)(1), the following requirements, in the context of the instant case, must be met: the wife must be divorced from her husband under a decree of divorce; the wife must have received from her husband periodic payments subsequent to the divorce decree; such payments must have been incurred by the husband because of the marital or family relationship; and such payments must have been in discharge of a legal obligation incurred by the husband under a written instrument incident to the divorce. *232 Our findings reveal that petitioner was divorced from Joseph under a North Carolina judgment of absolute divorce dated October 17, 1960; that she received from Joseph during the years 1961 through 1964, $125 per month pursuant to a document dated August 25, 1960; and that Joseph considered the August 25th document to be legally binding upon him and the monthly payments called for therein to constitute a legal obligation. Inasmuch as Joseph agreed to sign the August 25th document because be considered it a condition precedent to petitioner filing for divorce, we think it follows that the document was "incident to the divorce." The only requirement remaining to be satisfied under section 71(a)(1) is that the periodic payments made to petitioner by Joseph were incurred by him "because of the marital or family relationship." While no precise guidelines exist for interpreting the words "marital or family relationship" as used in section 71(a), the decided cases reflect a liberal construction of those words. Alice L. Heath, 30 T.C. 339 (1958), affd. per curiam 265 F. 2d 662 (C.A. 2, 1959); Jerome A. Blate, 34 T.C. 121 (1960). The Commissioner's *233 regulations, section 1.71-1 (b)(4), Income Tax Regs., provide, in respect to this requirement, the following: Sec. 1.71-1 Alimony and separate maintenance payments; income to wife or former wife. 363 (b) Alimony or separate maintenance payments received from the husband - * * * * * * (4) Scope of section 71(a). Section 71 (a) applies only to payments made because of the family or marital relationship in recognition of the general obligation to support which is made specific by the decree, instrument, or agreement. Thus, section 71 (a) does not apply to that part of any periodic payment which is attributable to the repayment by the husband of, for example, a bona fide loan previously made to him by the wife, the satisfaction of which is specified in the decree, instrument, or agreement as a part of the general settlement between the husband and wife. [Emphasis added.] Thus, in order to prevail, petitioner must prove, pursuant to the statute and pertinent regulations, that the periodic payments received by her were not incurred by Joseph "because of the marital or family relationship" but for reasons other than Joseph's "general obligation to *234 support." Subsequent to the December 24, 1958, separation agreement and prior to the signing of the August 25, 1960, document, it was Joseph's understanding with petitioner that he was not required to provide any financial assistance to her. Yet, in spite of that fact, the record shows that as soon as Joseph began employment full time in Septmeber 1959, he immediately began sending petitioner monthly checks of $100 and later $125. Thus, when Joseph agreed to pay petitioner $125 a month under the document dated August 25, 1960, he was merely continuing, in amount and frequency, the payments he had been making to petitioner theretofore. We think Joseph considered the former payments, as well as the later payments made pursuant to the August 25th document, to be in fulfillment of his general obligation to support petitioner. While the fact that Joseph was desirous of obtaining a divorce from petitioner may have been the principal reason for his signing the document of August 25th, that did not, under the facts in this case, negate the possibility that the payments called for by that document were made in recognition of Joseph's general obligation to support petitioner after their *235 divorce. We therefore hold that the periodic payments received by petitioner from Joseph satisfied the "marital or family relationship" requirement found in section 71(a) and for that reason petitioner was required to include in her gross income the amount of those payments during the years in question. In light of our determination, we need not consider whether the requirements of section 71(a)(2) were also met. Decisions will be entered for the respondent. Footnotes
1. Cases of the following petitioners are consolidated herewith: Elizabeth W. Oxendine McCullough (formerly Elizabeth W. Oxendine), Docket No. 5493-65; and Elizabeth W. McCullough ( formerly Elizabeth W. Oxendine) and John Paul McCullough, Docket No. 5494-65.↩
2. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
3. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written Separation Agreement. - If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.↩